UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MICHAEL STEPHEN VAUGHN, | ) | Case No. 21-11260-KHK |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| H. JASON GOLD, IN HIS CAPACITY | ) | |
| AS CHAPTER 7 TRUSTEE FOR | ) | |
| MICHAEL STEPHEN VAUGHN, | ) | Adversary Proceeding |
| | ) | No. 22-01038-BFK |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| BRYAN DEANGELO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter came before the Court for a trial on the merits on August 17, 2023. The Plaintiff, H. Jason Gold, Trustee, seeks to avoid and recover a $300,000.00 payment made by the Debtor to the Defendant, Bryan DeAngelo, on August 3, 2020. For the reasons stated below, the Court finds for the Defendant on all Counts.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A. The Debtor.*

1.  The Debtor, Michael S. Vaughn, is an individual residing in Alexandria, Virginia.

2. He is employed with Natcom Technologies, Inc. ("Natcom"). In 2020, he had a salary of approximately $135,000.00 per year. He was, however, laid off from July 2020 through December 2020, so he received approximately $100,000.00 in income in 2020 from Natcom.

3. The Debtor and his ex-wife owned a home in Fairfax Station, Virginia. They also owned a second home in Corolla, N.C. ("the Beach House"). They purchased the Beach House in 1999 or 2000 for approximately $480,000.00.

4. The Beach House was subject to two mortgages, a first mortgage in the amount of approximately $335,000.00, and a second mortgage (a HELOC) in the amount of approximately $480,000.00.

5. In May 2019, the Debtor and his wife entered into a Marital Settlement Agreement ("MSA"). Def. Ex. 4. The MSA provided that the Debtor would retain both the marital residence in Fairfax Station and the Beach House. *Id*. at p. 4. In exchange, he would be required to pay his ex-wife the sum of $166,215.00. *Id*.[1]

6. In March 2020, the Debtor applied for, and received, mortgage forbearances on both the first mortgage and the second mortgage on the Beach House. He did not, therefore, pay the mortgages in 2020, but he continued to rent out the property. In the Summer of 2020, he rented the Beach House for $9-10,000.00 per month. Other than ordinary operating expenses, such as pool maintenance and landscaping, the Debtor received all the rental income. He received approximately $50,000.00 in net rental income in 2020.

7. In July 2020, the Debtor sold the marital home in Fairfax Station, for a gross sales price of $1,350,000.00. Pl. Ex. 13; Def. Ex. 1. He received $310,028.28 in net proceeds from the sale of the Fairfax Station Home. Def. Ex. 2.

---

[1] The Court will refer to the Plaintiff's Exhibits as "Pl. Ex. __," and the Defendant's Exhibits as "Def. Ex. __."

8. He then moved into an apartment in Alexandria, Virginia, with a rental obligation of $2,300.00 per month.

9. Later that year, in October 2020, the Debtor transferred the Beach House to a limited liability company known as 1072 Lighthouse, LLC ("1072 Lighthouse"). Pl. Ex. 17; Def. Ex. 4. The Transfer was for no consideration and was by a "Deed of Gift." *Id.* at p. 2. At the time of this transfer, the Debtor was the 51% member, and the Defendant, Bryan DeAngelo, was the 49% member. Pl. Ex. 28, Ex. A (Membership Interest Schedule).

B. *VaughnHome, Inc.*

10. VaughnHome, Inc. ("VaughnHome") was a Virginia corporation established in 2006. It was in the business of residential renovations. The Debtor, Michael Vaughn, was VaughnHome's President and 100% shareholder. The company ceased operations in June 2019.

11. The Defendant, Bryan DeAngelo, was VaughnHome's landlord.

12. VaughnHome essentially operated on a shoestring budget. It had no capitalization from its inception. It had no bank line of credit, and it consistently bounced checks. Pl. Ex. 29, p. 29-645.

13. The Debtor used VaughnHome's bank account to pay for his personal expenses, which he described as shareholder withdrawals. Pl. Ex. 29, pp. 29-628, 29-639; Pl. Ex. 66; Pl. Ex. 69; Pl. Ex. 106; Pl. Ex. 101.

14. In March 2019, VaughnHome entered into a Contract with Daniel and Claire Hassett, for the renovation of their home. Pl. Ex. 41, Complaint Ex. 1 (Agreement).

15. The renovation turned into a nightmare for the Hassetts. Demolition work was not completed; a wall was incorrectly installed; and subcontractors showed up and left at will, without finishing their work.

3

16. The Hassetts made two payments to VaughnHome, in the amounts of approximately $42,000.00 and $27,000.00. Pl. Ex. 93.

17. The Hassetts terminated their Contract with VaughnHome in April or May 2019.

18. In June 2019, the Hassetts instituted an arbitration proceeding against VaughnHome and Mr. Vaughn. They were required to dismiss their arbitration claim against Mr. Vaughn after the arbitrator ruled that Mr. Vaughn was not a party to the Contract and was not subject to its arbitration clause.

19. In December 2019, the Hassetts obtained an arbitration award against VaughnHome in the amount of $201,919.52, plus interest. Pl. Ex. 9. The Circuit Court of Fairfax County entered the award as a Judgment against VaughnHome on June 19, 2020. Pl. Ex. 11.

20. In July 2020, the Hassetts filed a lawsuit against Mr. Vaughn personally, asserting that he was liable for their damages on several theories, including alter ego and corporate veil-piercing. Pl. Ex. 12.

21. The action against Mr. Vaughn was stayed when he filed for bankruptcy protection with this Court.

22. The Hassetts later filed a Proof of Claim in Mr. Vaughn's bankruptcy case in the amount of $250,000.00. Pl. Ex. 41.

C. *The Debtor's Relationship with Mr. DeAngelo.*

23. Mr. DeAngelo, as noted, was the landlord for VaughnHome. He also acted as a subcontractor to VaughnHome on two or three occasions, including on the Hassetts' property.

24. Mr. DeAngelo loaned the Debtor money on at least two occasions. Both loans were purportedly secured by an interest in the Beach House.

25. The first loan was in August 2018, when Mr. DeAngelo loaned Mr. Vaughn $105,000.00 (the "First Loan"). In exchange, Mr. Vaughn promised Mr. DeAngelo a 25% interest in the Beach House, although this agreement was never documented. This loan was repaid at some point (precisely when is not known to the Court).

26. Mr. DeAngelo made a second loan to the Mr. Vaughn in July 2019, in the amount of $200,000.00 (the "Second Loan"). Pl. Ex. 36, p. 9. Mr. Vaughn used this loan to pay his ex-wife the amount due to her under the MSA. *Id*. at p. 11. In exchange, Mr. Vaughn provided Mr. DeAngelo with a membership interest of 49% in 1072 Lighthouse (including the 25% membership interest previously granted)

27. The Debtor used the balance of the proceeds of the Second Loan to repay several of his creditors, and to prepay his monthly rent on his apartment for six months. Pl. Ex. 61.

28. On August 3, 2020, the Debtor transferred $300,000.00 ("the Transfer") to the Defendant by a wire transfer from Burke & Herbert Bank. Pl. Ex. 2. The source of the funds was the sale of the Debtor's Fairfax Station property, which he had sold the previous month. Def. Exs. 1, 2. This payment satisfied the Second Loan.

D. *The Debtor Files for Bankruptcy.*

29. The Debtor filed a Voluntary Petition under Chapter 13 with this Court on July 16, 2021. Case No. 21-11260-KHK, Docket No. 1.

30. The case was converted to Chapter 7 on October 25, 2021. Docket No. 40. The Plaintiff in this adversary proceeding, H. Jason Gold, was appointed as the Chapter 7 Trustee.

31. Mr. Gold brought an adversary proceeding against 1072 Lighthouse, LLC, to avoid the transfer of the Beach House to the LLC by the Debtor. *Gold v. 1072 Lighthouse, LLC*,

5

Adv. Pro. 21-1065-KHK. The Trustee was successful in the adversary proceeding, and the Beach House was returned to the bankruptcy estate. Docket No. 13.

32. The Trustee then filed a Motion to sell the Beach House free and clear of liens, claims and interests, which was granted. Docket Nos. 131, 143.

33. The Trustee sold the Beach House and its contents for a gross sale price of $1,390,001.00. Pl. Ex. 107 (Report of Sale). The property was marketed by a realtor and was the product of arms' length bargaining.

34. The Beach House sale closed on August 31, 2022. After a Seller Credit ($25,000.00), the payment of the first mortgage ($360,792.11) and the second mortgage ($513,433.28), commissions and selling expenses, the Trustee netted $386,162.15 for the benefit of the bankruptcy estate. *Id.* at p. 8.[2]

35. Additionally, the U.S. Trustee filed an adversary proceeding against the Debtor, objecting to the Debtor's discharge under Section 727 of the Bankruptcy Code. *Fitzgerald v. Vaughn*, Adv. Pro. No. 22-1014-KHK. The Court denied the Debtor his discharge on October 11, 2022. Docket No. 21.

36. The Trustee filed this adversary proceeding on July 13, 2022. Docket No. 1.

37. On April 28, 2023, Judge Kindred granted in part and denied in part the Trustee's Motion for Summary Judgment. Docket No. 38. Judge Kindred granted the Trustee's Motion in part on Count II, the Trustee's constructively fraudulent transfer count under Bankruptcy Code Section 548(a)(1)(B), finding that there was no material dispute that the Transfer was for less than reasonably equivalent value. Docket No. 38. She denied the Trustee's Motion on Count II

---

[2] U.S. Bank Trust, N.A., as Trustee, the lender secured by the first mortgage, filed a Proof of Claim in the amount of $327,526.38. Pl. Ex. 54. Wells Fargo Bank, N.A., the lender secured by the second mortgage, filed a Proof of Claim in the amount of $496,224.57. Pl. Ex. 52. The were both entitled to post-petition interest, fees and costs as oversecured lenders. 11 U.S.C. § 506(b).

on the issue of whether the Debtor was insolvent, was left with an unreasonably small capital, or was incurring debts beyond his ability to pay. *Id.*

38. At the conclusion of the trial on August 17, 2023, the Trustee conceded that he did not have the evidence to prove an insider preference against the Debtor under Bankruptcy Code Section 547(b)(4)(B). The Court, therefore, entered an Order dismissing Count V of the Complaint. Docket No. 65.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) (proceedings to determine, avoid or recover fraudulent conveyances).

The Plaintiff has the burden of proof on all issues by a preponderance of the evidence. *In re Bay Vista of Virginia, Inc.*, 428 B.R. 197, 221 (Bankr. E.D. Va. 2010).

### I.    Counts I and III – Actually Fraudulent Transfer (11 U.S.C. §548(a)(1)(A) and Va. Code § 55.1-400).

Counts I and III of the Trustee's Complaint allege that the Transfer was made with the actual intent to hinder, delay or defraud creditors. 11 U.S.C. § 548(a)(1)(A) and Va. Code § 55.1-400. Because evidence of intent is often elusive, the courts employ a badges of fraud analysis. The badges of fraud can include a transfer to an insider (a spouse or a relative), transfers for no consideration, or the retention and continued use of the property by the transferor. *In re Laines,* 352 B.R. 397, 403 (Bankr. E.D. Va. 2005); *Hyman v. Porter (In re Porter),* 37 B.R. 56, 63 (Bankr. E.D. Va. 1984).

In this case, the Court finds that there were no badges of fraud present in the Transfer. Mr. DeAngelo was not a relative of the Debtor. The Transfer was in repayment of an undisputed debt.

The Debtor did not retain any possession or control of the funds after the Transfer. As discussed below, the Trustee has not proven that the Debtor was insolvent at the time of the Transfer or was rendered insolvent by the Transfer.

The Trustee argues that the Transfer is suspicious because it came on the heels of the Judgment against VaughnHome in June 2020, and the lawsuit filed by the Hassetts against the Debtor in July 2020. This may be true, but the Debtor did not gain anything from repaying Mr. DeAngelo, as he might have if he had the transferred funds to a family member, or for example where he transferred the Beach House to a limited liability company and retained a 51% membership interest. Under Virginia law (Count III here), a debtor can prefer certain creditors over others, and pay legitimate debts, without any imputation of fraud, even when the debtor is insolvent at the time of the transfer. *Grayson v. Westwood Building*, L.P., 859 S.E.2d 651, 674 (Va. 2021).

The case law under Section 548(a)(1)(A) (formerly Section 548(a)(1)) similarly holds that the intent to prefer one creditor over another, without more in the way of badges of fraud (e.g., a Ponzi scheme presumption), is not fraudulent. *Picard v. Citibank North America, Inc. (In re Bernard Madoff Securities, Inc.),* 12 F.4th 171, 200 (2d Cir. 2021) (Menashi, J. concurring) ("Normally, when a creditor receives a payment from a debtor—even if the creditor knows that the debtor is insolvent and the payment will prevent other creditors from being repaid—that payment is considered a preference, not a fraudulent transfer"); *see also In re Riemenschneider,* 2020 WL 129438 (Bankr. D. Ore. 2020) ("Mere intent to prefer one creditor over another, although incidentally hindering or delaying creditors, will not establish a fraudulent transfer under section 548(a)(1).") (quoting *Rubin Bros. Footwear v. Chemical Bank (In re Rubin Bros. Footwear),* 119 B.R. 416, 423 (S.D.N.Y. 1990)).

The Court finds that the Trustee has not met his burden to prove that the Transfer was actually fraudulent. The Court finds in favor of the Defendant on Counts I and III.

### II. Count IV – Constructively Fraudulent Transfer (Va. Code § 55.1-401).

Count II alleges that the Transfer is avoidable under Va. Code § 55.1-401. Under this Code Section, transfers that lack any valuable consideration, made while the Debtor was insolvent or was rendered insolvent thereby, are avoidable. The repayment of an antecedent debt satisfies the valuable consideration requirement. *In re Meyer,* 244 F.3d 352 (4th Cir. 2001) (the phrase "upon consideration deemed valuable in law" refers to "*any* valuable consideration received by the transferor") (emphasis in original) (quoting *Moore v. Manson (In re Springfield Furniture, Inc.),* 145 B.R. 520, 533 (Bankr. E.D. Va. 1992)). *See also Grayson v. Westwood Buildings, L.P.,* 859 S.E.2d, at 669 ("Virginia law has always recognized that paying or securing a legally enforceable antecedent debt is a conveyance supported by consideration.")

In this case, the Transfer repaid an undisputed, antecedent debt. There was consideration for the Transfer in the form of the satisfaction of the debt. The Court finds for the Defendant on Count IV.

### III. Count II – Constructively Fraudulent Transfer (11 U.S.C. § 548(a)(1)(B)).

Bankruptcy Code Section 548(a)(2) differs from Va. Code Section 55.1-401, in that the Bankruptcy Code Section allows for the avoidance of transfers that lacked reasonably equivalent value. 11 U.S.C. § 548(a)(1)(B). Judge Kindred held on summary judgment that the Transfer was for less than reasonably equivalent value. The remaining issue is whether the Trustee has satisfied his burden of proof on whether: (a) the Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer; (b) the Debtor was left with an unreasonably

small capital; or (c) the Debtor was incurring debts that were beyond his ability to pay. 11 U.S.C. § 548(a)(1)(B)(I)-(III).

   A.  *Insolvency.*

The parties agree that the test for insolvency under Section 548(a)(1)(B)(I) is a balance sheet test, under which the Court compares the Debtor's assets and liabilities at a fair valuation at the time of the Transfer. 11 U.S.C. § 101(32). *In re Randolph Hosp., Inc.,* 644 B.R. 446, 460 (Bankr. M.D.N.C. 2022); *In re Stephenson*, 2012 WL 4680703 (Bankr. E.D.N.C. 2012); *In re Ryan*, 472 B.R. 714, 727 (Bankr. E.D. Va. 2012). In this case, the Debtor's only asset of any real significance at the time of the Transfer was the Beach House. His insolvency at the time of the Transfer, therefore, depends upon a valuation of the Beach House.

The Court ruled at trial that: (a) capital gains taxes that the bankruptcy estate incurred when the Trustee sold the Beach House were not liabilities at the time of the sale and, therefore, could not be counted on the liabilities side of the Debtor's balance sheet; and (b) selling expenses (real estate commissions, etc.) also could not be deducted because that would employ a liquidation test, not a balance sheet test. The Trustee's case, however, suffered from a more fundamental flaw – the Trustee did not present any expert testimony on the value of the Beach House at the time of the Transfer in August 2020.

The Trustee argues that his sale of the Beach House in August 2022, two years after the Transfer, is the best evidence of its value. The Court might agree, if the sale were much closer in time to the Transfer. In this case, two years elapsed from the date of the Transfer to the sale of the Beach House. The Court received no evidence that the market for second homes in the Outer Banks was relatively unchanged over that two-year period.[3] Courts generally will not allow this

---

[3] The Court sustained an objection to the Trustee's attempt to testify on market conditions in the Outer Banks during that period of time. The Trustee was not qualified as an expert witness on real estate valuation.

kind of "retrojection," especially where evidence of the value at the time of the transfer (in this case an appraisal) could be available. *See In re Blackmar,* 2022 WL 2399105 (Bankr. N.D. Ohio 2022) (rejecting reliance on a two and one-half year gap); *In re Bentivegna,* 597 B.R. 261, 267 (Bankr. E.D. Pa. 2019) (bankruptcy court refusing to find insolvency based on Debtors' Schedules for a transfer that occurred ten months before the petition date); *In re Dressel Assocs., Inc.,* 536 B.R. 158, 165 (W.D. Pa. 2015) (transfer nearly one year prior to bankruptcy); *In re Stanley*, 384 B.R. 788, 808 (Bankr. S.D. Ohio 2008) (two-year gap between date of alleged fraudulent transfer and petition date); *Gold v. Laines (In re Laines),* 352 B.R. 397, 402 n. 6 (Bankr. E.D. Va. 2005) ("Insolvency determined as of one date may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates"); *Washington Bancorporation v. Hodges (In re Washington Bancorporation),* 180 B.R. 330, 334 (Bankr. D.C. 1995) (six-month gap). The Court further notes that between the date of the Transfer in August 2020 and the date of the sale in August 2022 there were two selling seasons, Spring of 2021, and Spring of 2022, both of which occurred during the pandemic, and which very well could have influenced market values in the Outer Banks.[4]

The Court finds that the Trustee has failed to meet his burden of proof because he did not present any evidence of the value of the Debtor's primary asset, the Beach House, as of the date of the Transfer.

---

[4] Both parties spent a good deal of time arguing about whether the Hassett Proof of Claim, which is based on alter ego or veil-piercing theories, should be counted on the liabilities side of the ledger. The Court finds it unnecessary to resolve this dispute, due to the Court's finding that the Plaintiff has not met his burden of proof on the asset side of the balance sheet test.

11

B. *Unreasonably Small Capital.*

Subsection II of Section 548(a)(1)(B) allows the Court to avoid a transfer for less than reasonably equivalent value where the transferor is left with an unreasonably small capital to conduct its business. 11 U.S.C. § 548(a)(1)(B)(II). This standard is rarely employed in individual cases. One example where this standard was applied in an individual case is *In re Parker,* 2015 WL 4747536 (Bankr. E.D.N.C. 2015). In *Parker*, the court analyzed the transfers under North Carolina law because they were made outside of Section 548(a)'s two-year lookback period. The Court did, however, look to case law under Section 548 for guidance. *Id.,* at 8 ("case law under § 548 has been used in interpreting and applying state fraudulent transfer statutes, and courts often find that a satisfaction of § 548 also satisfies N.C. Gen. St. § 39-23.4(a)(2).") The court held that "unreasonably small capital" depends on whether, at the time of the transfer, the debtor had an "inability to generate sufficient profits to sustain operations." *Id.*, at 9. The court noted that this is an objective test, as to whether the debtor's projections were reasonable. *Id*.

Judge St. John of this Court similarly has held that the term refers to "the inability to generate sufficient profits to sustain operations." *In re Bay Vista of Virginia, Inc.*, 428 B.R. 197, 225 (Bankr. E.D. Va. 2010) (quoting *Moody v. Sec. Pac. Bus. Credit, Inc.,* 971 F.2d 1056, 1070 (3d Cir. 1992)). Again, the test is objective: "the court should ask whether the parties' projections regarding the ability to sustain operations were reasonable." *Id.*

If VaughnHome were Mr. Vaughn's sole source of income at the time of the Transfer, the Court would look to the finances of VaughnHome to determine whether it, and consequently the Debtor, had an unreasonably small capital after the Transfer. Further, the Court would conclude that VaughnHome had an unreasonably small capital to conduct its business after the date of the Transfer. VaughnHome operated on a shoestring budget, frequently defaulted on its contracts,

and regularly bounced checks. VaughnHome had no capitalization from the outset. It had no bank line of credit to cover cash shortfalls when it awaited payment on its contracts, or when it waited for homeowners' checks to clear. VaughnHome, however, ceased doing business in July 2019, one year before the Transfer.

The question is whether Mr. Vaughn as an individual had an unreasonably small capital to conduct his business or transactions in August 2020. By the time of the Transfer in August 2020, VaughnHome was out of business. The Debtor went back to work at Natcom in December 2020. He was not engaged in any business or transaction that required capital after VaughnHome collapsed, other than the Beach House, which operated at a substantial profit at the time due to the Covid mortgage forbearances. He had over $300,000.00 in equity in the Fairfax Station home, which he sold one month before the Transfer, the proceeds of which he used to repay the Defendant. The Court did not hear any expert testimony on the Debtor's alleged unreasonably small capital.

The Court finds that the Debtor was not engaged in a business or transaction for which he had an unreasonably small capital remaining at the time of the Transfer in August 2020.

C. *Incurring Debts Beyond the Debtor's Ability to Pay.*

Finally, the Court examines whether the Debtor was incurring debts beyond his ability to pay at the time of the Transfer in August 2020. Subsection III of Section 548(a)(1)(B) allows the Court to avoid a transfer for less than reasonably equivalent value where the transferor intended to incur, or believed that he would incur, debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. § 548(a)(1)(B)(III). Although this suggests a subjective intent, courts have held that the intent requirement "can be inferred where the facts and circumstances surrounding the transaction show that the debtor could not have reasonably believed that it would

be able to pay its debts as they matured." *Official Committee of Unsecured Creditors v. CalPERS Corporate Partners, LLC*, 2020 WL 6385619, *46 (D. Me. 2020) (quoting Collier on Bankruptcy ¶ 548.05). The statute contemplates a "forward-looking" test that "requires assessing the debtor's reasonable prediction about its ability to repay a debt as it is incurred." *Id.*

Although he was unemployed in August 2020, having been laid off from Natcom, the Debtor earned $100,000.00 from his employment from Natcom until he was laid off in July. Further, he received another $50,000.00 in net income from the beach house in 2020, thanks to Covid mortgage forbearances. There was no evidence that Mr. Vaughn was unable to pay his rent or his living expenses in the Summer and Fall of 2020. He rented the Beach House out for $9-10,000.00 per month. He paid minimal expenses associated with the Beach House and did not legitimately pay the mortgages (as opposed to defaulting on the mortgages). His apartment rent was $2,300.00 per month. In fact, he prepaid his rent ($14,000.00) for six months, with the use of the Second Loan proceeds from Mr. DeAngelo, so he had no rent payment due at the time of the Transfer. Pl. Ex. 61. He was obligated on a student loan for his children in the amount of $88,000.00 (Pl. Ex. 45), and he had several consumer debts with Navy Federal Credit Union that he understood had been charged off. Pl. Exs. 46-49. The Debtor was not in bad shape from a cash flow perspective in the Summer of 2020, thanks primarily to the mortgage forbearances. The Hassetts were suing him, but that is different from saying that he was incurring debts that he had no ability to repay in the Summer of 2020 (the Hassetts terminated the Contract with VaughnHome in April or May 2019). Again, the Court heard no expert testimony on the Debtor's allegedly incurring debts that he was unable to pay in the Summer of 2020.

The Court finds in favor of the Defendant on Count II.

IV. **Counts VI and VII – Recovery of Avoided Transfer (11 U.S.C. 550(a)) and Preservation of Avoided Transfer (11 U.S.C. § 551).**

The Court has found in favor of the Defendant on all of the avoidance Counts, above. The Court therefore will dismiss Counts VI and VII.

## Conclusion

The Court will enter a separate Judgment Order under which:

A. Counts I, II, III, IV, VI and VII will be dismissed.

B. Judgment will be entered in favor of the Defendant.

C. The clerk will mail copies of this Memorandum Opinion, together with the accompanying Judgment Order, or will provide cm-ecf notice of their entry, to the parties below.

Date: Sep 19 2023

Alexandria, Virginia

/s/ Brian F Kenney
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: September 19, 2023

<u>Copies to</u>:

H. Jason Gold, Esq.
P.O. Box 57359
Washington, DC 20037
*Plaintiff*

Dylan G. Trache, Esq.
101 Constitution Avenue, N.W., Suite 900
Washington, DC 20001
*Counsel for the Plaintiff*

Robert S. Brandt, Esq.
600 Cameron Street
Alexandria, VA 22314
*Counsel for the Defendant*

Bryan DeAngelo
376 Buckskin Road
Berthoud, CO 80513
*Defendant*